IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:19-HC-2326-FL

| | | |
|---|---|---|
| CEDRIC JAMAL LANE, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| STATE OF NORTH CAROLINA, | ) | |
| | ) | |
| Respondent. | ) | |

Petitioner, a state inmate proceeding pro se, petitions this court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The matter is before the court on respondent's motion for summary judgment (DE 19) pursuant to Federal Rule of Civil Procedure 56. Although advised of his right to do so, petitioner did not respond to the motion. In this posture, the issues raised are ripe for ruling.

**STATEMENT OF THE CASE**

On October 5, 2017, petitioner was convicted following a jury trial in the Edgecombe County Superior Court of one count of attempted first-degree murder, four counts of discharging a weapon into an occupied vehicle, one count of possession of a firearm by a felon, and two counts of assault with a deadly weapon. (Verdict Forms (DE 21-1) at 39–42).[1] The Edgecombe County Superior Court sentenced petitioner to the following terms of imprisonment: 1) 180 to 220 months for attempted first-degree murder; 2) 73 to 100 months for each count of discharging a

---

[1] Unless otherwise specified, page numbers specified in citations to the record in this order refer to the page number of the document designated in the court's electronic case filing (ECF) system, and not to page numbering, if any, specified on the face of the underlying document.

weapon into an occupied vehicle; 3) 14 to 26 months for possession of a firearm by a convicted felon; and 4) 150 days for each count of assault with a deadly weapon. (J. & Commitment (DE 21-1) at 43–56). The terms of imprisonment were ordered to run consecutively with the exception of two terms for discharging a weapon into an occupied vehicle, which were ordered to run concurrently with the sentence for attempted first-degree murder. (Id.).

On or about April 28, 2018, petitioner filed direct appeal of his judgments in the North Carolina Court of Appeals. (Record on Appeal (DE 21-1) at 2). On March 19, 2019, the court of appeals issued opinion affirming the judgments. State v. Lane, No. COA18-444, 2019 WL 1281471 (N.C. Ct. App. Mar. 19, 2019). Petitioner sought further appellate review by filing petition for writ of discretionary review with the North Carolina Supreme Court on April 23, 2019, which that court denied by summary order on June 11, 2019. (Order, State v. Lane, No. 143P19 (DE 21-7)).

Petitioner filed the instant § 2254 petition on December 3, 2019, alleging the following claims: 1) the state trial court violated Federal Rule of Evidence 609 by allowing prosecutors to elicit evidence that petitioner had a prior relationship with a minor; 2) prosecutorial misconduct based on allegedly improper remarks during closing argument and ineffective assistance of trial counsel based on alleged failure to object to same; 3) the trial court erred by not instructing the jury on imperfect self-defense or attempted voluntary manslaughter, and ineffective assistance of counsel for failing to object to same; and 4) the trial court erred by denying petitioner's request to dismiss his trial counsel and appellate counsel was ineffective for failing to raise this issue on direct appeal. On January 6, 2021, respondent filed the instant motion for summary judgment, supported by statement of material facts, memorandum of law, and appendix of exhibits

comprising records from petitioner's trial, sentencing, and appellate proceedings. That same day, the court issued notice informing petitioner of his right to respond to the motion pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975). The notice provided instructions for responding to the motion and warned petitioner that the court may enter summary judgment in favor of respondent if petitioner failed to respond. As noted, petitioner did not file response to the motion.

## STATEMENT OF THE FACTS

The facts underlying petitioner's convictions, as recounted by the North Carolina Court of Appeals, are summarized below:

> On 30 December 2016, someone shot at Ra'chelle Sheppard and her boyfriend, Trakelvious Williams, while the couple were driving with Sheppard's parents in Princeville. Williams suffered a gunshot wound to his back. Sheppard sustained injuries from shattered window glass. After investigating, law enforcement arrested Lacedric Lane, Sheppard's ex-boyfriend, in connection with the shooting. They charged Lane with possession of a firearm by a felon and multiple charges of attempted first degree murder, assault with a deadly weapon with intent to kill, and discharging a weapon into an occupied vehicle. The case went to trial.
>
> At trial, the jury heard competing witnesses give their accounts of what happened. Lane testified that he was walking by himself that night when a car approached him. He stated that he saw people waving at him from inside the car saying "man, watch your back," at which point he recognized Sheppard driving the car with Williams in the backseat. Lane knew Williams because they lived near each other. Lane testified that he heard rumors Williams and Sheppard were dating but he did not "believe the hype" because he had never seen them together.
>
> According to Lane, Williams rolled down the back window of the car and said "mother-f***er I'm going to kill you." Lane tried to walk away when he heard two gunshots. Lane asserted that he shot back in self-defense, aiming at Williams because he believed Williams fired at him. Lane's account ended with the car speeding away and Lane leaving the scene, throwing his gun into the Tar River because he "was scared."
>
> Lane admitted at trial that he lied to police in his initial interview, denying any involvement in the shooting, because he was "scared" of getting in trouble. He

3

claimed he eventually decided to "tell the truth," and gave the police an account consistent with his trial testimony. Lane also identified Jerrod Lawrence as a witness to the shooting.

Lawrence had been Lane's friend for about ten years and testified on Lane's behalf at trial. Lawrence stated he saw Sheppard driving with Williams in the backseat and that the car nearly hit Lane as Williams stuck his hand out the car window saying "I told you I was going to get you, B." Lawrence testified that he then heard multiple gunshots but did not see Lane shooting a gun. Although he admitted having several phone calls with Lane before trial, while Lane was in jail, he denied that Lane had told him what to say.

Williams, testifying for the State, gave a different account of the shooting. He stated that Sheppard was in the back of the car with him and that Sheppard's mother was driving, with Sheppard's stepfather sitting next to her. Williams claimed that nobody in the car was armed. At a stop sign, Williams heard shots and saw Lane near the car holding a revolver and trying to open the front passenger door. Williams testified that he saw Lane shoot once where Sheppard sat and multiple times through each car window. Williams explained that he was shot in the back while trying to shield Sheppard.

Sheppard, her mother, and her stepfather also testified for the State, each giving substantially the same account as Williams. Like Williams, each of them asserted that nobody inside the car was armed that night. Detective Andrea Lewis with the Edgecombe County Sherriff's Office also testified that when she interviewed the shooting victims at the hospital, each one identified Lane as the shooter. When Detective Lewis asked Sheppard why Lane would have shot them, Sheppard replied it was because "[t]hey had broke[n] up and she had moved on."

Sheppard, then nineteen years old, testified at trial that she and Lane broke up in 2016 after dating for about two years. During trial, the State asked several witnesses about Sheppard's age when she began dating Lane and each responded that Sheppard was fifteen or sixteen at the time. Lane objected to this testimony each time, and the trial court overruled the objection.

Lane, 2019 WL 1281471, at *1–2.

# COURT'S DISCUSSION

A.      Standard of Review

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party must then "come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (internal quotation omitted).

The standard of review for habeas petitions brought by state inmates, where the claims have been adjudicated on the merits in the state court, is set forth in 28 U.S.C. § 2254(d). That statute states that habeas relief cannot be granted in cases where a state court considered a claim on its merits unless the decision was contrary to or involved an unreasonable application of clearly established federal law as determined by the United States Supreme Court, or the state court decision was based on an unreasonable determination of the facts. See 28 U.S.C. § 2254(d)(1) and (2). A state court decision is "contrary to" Supreme Court precedent if it either arrives at "a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite" to that of the Supreme Court. Williams v. Taylor, 529 U.S. 362, 406 (2000). A state court decision "involves an unreasonable application" of Supreme Court law "if the state

5

court identifies the correct governing legal principle from [the Supreme] Court's cases but unreasonably applies it to the facts of the state prisoner's case." Id. at 407. A state court decision also may apply Supreme Court law unreasonably if it extends existing Supreme Court precedent to a new context where it does not apply, or unreasonably refuses to extend existing precedent to a new context where it should apply. Id. The applicable statute

> does not require that a state court cite to federal law in order for a federal court to determine whether the state court decision is an objectively reasonable one, nor does it require a federal habeas court to offer an independent opinion as to whether it believes, based upon its own reading of the controlling Supreme Court precedents, that the defendant's constitutional rights were violated during the state court proceedings.

Bell v. Jarvis, 236 F.3d 149, 160 (4th Cir. 2000), cert. denied, 534 U.S. 830 (2001). Moreover, a determination of a factual issue made by a state court is presumed correct, unless rebutted by clear and convincing evidence. See 28 U.S.C. § 2254(e)(1).

B.  Analysis

   1.  Procedural Default

Respondent argues that petitioner's claims are procedurally defaulted, with the exception of the claim for ineffective assistance of appellate counsel. Absent a valid excuse, a state prisoner must exhaust his remedies in state court before seeking federal habeas corpus relief. See 28 U.S.C. § 2254(b). To exhaust available state court remedies, a petitioner must "fairly present[] to the state court both the operative facts and the controlling legal principles associated with each claim." Longworth v. Ozmint, 377 F.3d 437, 448 (4th Cir. 2004) (internal quotation omitted). Section 2254's exhaustion requirement demands that state prisoners give "the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). This

6

"one full opportunity" includes filing petitions for discretionary review with the state supreme court when that review is part of the ordinary appellate procedure in the state. See id. A habeas petitioner has the burden of proving that a claim is exhausted. Mallory v. Smith, 27 F.3d 991, 994 (4th Cir. 1994).

In North Carolina, a petitioner may satisfy § 2254's exhaustion requirement of by directly appealing his conviction to the North Carolina Court of Appeals and then petitioning the Supreme Court of North Carolina for discretionary review, or by filing a motion for appropriate relief ("MAR") and petitioning the North Carolina Court of Appeals for a writ of certiorari. See N.C. Gen. Stat. §§ 7A-27, 7A-31, 15A-1422.

A claim that has not been adequately presented to the state courts may be treated as exhausted if it is clear that the claim would be procedurally barred under state law if the petitioner now attempted to present it. Baker v. Corcoran, 220 F.3d 276, 288 (4th Cir. 2000); Breard v. Pruett, 134 F.3d 615, 619 (4th Cir. 1998). A federal habeas court may not review such claims because the state procedural bar provides an adequate and independent state law ground for the conviction and sentence, unless the petitioner can show cause and prejudice or a fundamental miscarriage of justice to excuse the default. Plymail v. Mirandy, 8 F.4th 308, 316 (4th Cir. 2021); Baker, 220 F.3d at 288 (citing Gray v. Netherland, 518 U.S. 152, 161 (1996)). To establish cause, a petitioner must show something external to the petitioner prevented him from complying with the state procedural rule. Coleman v. Thompson, 501 U.S. 722, 753 (1991). To show prejudice, a petitioner must show he was actually prejudiced as a result of the alleged violation of federal law. United States v. Frady, 456 U.S. 152, 168 (1982).

Respondent argues that the majority of petitioner's claims are procedurally defaulted where petitioner could have presented the claims in his direct appeal but failed to do so, and if he returned to state court and attempted to present them by way of an MAR, they would be barred pursuant to N.C. Gen. Stat. § 15A-1419(a)(3). Section 15A-1419(a)(3) provides that an MAR shall be denied where "[u]pon a previous appeal the defendant was in a position to adequately raise the ground or issue underlying the present motion but did not do so." Section 15A-1419(a)(3) is an independent and adequate state procedural bar precluding federal habeas review absent a showing of cause, prejudice, or a fundamental miscarriage of justice. See Lawrence v. Branker, 517 F.3d 700, 714–15 (4th Cir. 2008); Rose v. Lee, 252 F.3d 676, 683 (4th Cir. 2001) (holding procedural bar pursuant to N.C. Gen. Stat. § 15A-1419 is mandatory), cert. denied, 534 U.S. 941 (2001).

Petitioner's claims challenging the state court's decision to admit testimony regarding Sheppard's age, alleging prosecutorial misconduct, challenging the failure to give jury instructions on imperfect self-defense or attempted voluntary manslaughter, and that the trial court erred by denying petitioner's request for new counsel were not exhausted during petitioner's direct appeal. With the exception of the evidentiary challenge to the victim's age, these claims were not presented to the North Carolina Supreme Court in petitioner's petition for discretionary review. (See DE 21-6 at 6–8, 21); see also O'Sullivan, 526 U.S. at 845 (explaining exhaustion requires that petitioner complete one complete round of the established appellate review process in the state, which includes petitions for discretionary review to the state Supreme Court).

Petitioner also did not present the evidentiary challenge to admission of the victim's age in a manner that alerted the state courts that the claim was based on a violation of federal law. His petition for discretionary review argued this claim solely in terms of North Carolina law. (See

8

DE 21-6 at 12–21). Fair presentation of a claim to state court requires that petitioner inform the state court of "both the operative facts and the controlling [federal] legal principles" at issue. Baker, 220 F.3d at 289. "It is not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state-law claim was made." See Anderson v. Harless, 459 U.S. 4, 6 (1982).

Where the foregoing claims were not presented to the state court on direct appeal, and petitioner was in an adequate position to do so, he is barred from presenting them in a post-conviction MAR. See N.C. Gen. Stat. § 15A-1419(a)(3); Lawrence, 517 F.3d at 714–15. Accordingly, these claims are procedurally defaulted and unreviewable in federal court absent a showing of cause and prejudice or a fundamental miscarriage of justice. See Plymail, 8 F.4th at 316; Baker, 220 F.3d at 288. And where petitioner did not respond to the instant motion, he fails to establish cause, prejudice, or a fundamental miscarriage of justice sufficient to excuse his procedural default. See Coleman, 501 U.S. at 748.

The court next turns to the claims alleging ineffective assistance of trial counsel. In North Carolina, ineffective assistance of counsel claims will only be resolved on direct review when counsel's ineffectiveness is apparent on the face of the appellate record. State v. Fair, 354 N.C. 131, 166–67 (2001). Section 15A-1419(a)(3) "is not a general rule that any [ineffective assistance of counsel] claim not brought on direct appeal is forfeited on state collateral review. Instead, the rule requires North Carolina courts to determine whether the particular claim at issue could have been brought on direct review." See McCarver v. Lee, 221 F.3d 583, 589 (4th Cir. 2000). Thus, ineffective assistance of counsel claims that are not raised on direct review are procedurally defaulted pursuant § 15A-1419(a)(3) "when the 'cold record' reveals that no further investigation

9

would have been required to raise the claim on direct review." Lawrence, 517 F.3d at 715 (quoting Fair, 354 N.C. at 166); see also Fowler v. Joyner, 753 F.3d 446, 463 (4th Cir. 2014) (explaining that under North Carolina's procedures for addressing ineffective assistance of counsel claims, "the federal habeas court will still be called upon to determine, on a case-by-case basis, whether the particular ineffective-assistance-of-trial-counsel claim identified, regardless of its merits, is nonetheless procedurally defaulted [pursuant to § 15A-1419] because it could have been and should have been raised on direct appeal").

Respondent argues that the claims alleging ineffective assistance of trial counsel could have been presented on direct appeal where the cold record reveals no additional investigation is necessary to raise the claim. In the absence of a response by petitioner, the court agrees that these claims could have been raised on direct appeal. The trial transcript would conclusively establish whether trial counsel failed to object to the prosecutor's closing argument or whether he neglected to request jury instructions on imperfect self-defense or voluntary manslaughter. See also Lane, 2019 WL 1281471, at *4 (noting that petitioner did not object to the jury instructions or the prosecutor's closing argument). And petitioner could have argued, on the basis of the cold record, that trial counsel could not have offered a strategic reason for failing to pursue these objections/instructions and that the required prejudicial effect on the proceedings was apparent from the record. See Fair, 354 N.C. at 166 (holding that ineffective assistance "claims that may be developed and argued without such ancillary procedures as the appointment of investigators or an evidentiary hearing" should be presented on direct appeal to avoid the procedural bar of N.C. Gen. Stat. § 15A-1419(a)(3)); see also McCarver, 221 F.3d at 588, 593 (ineffective assistance of counsel claim alleging trial counsel failed to file motion in limine could have been raised on direct

appeal under North Carolina law); State v. Ginn, 59 N.C. App. 363, 375–76 (1982) (addressing ineffective assistance of counsel claim based upon trial counsel's alleged failure to adequately investigate his case).[2] Accordingly, petitioner is procedurally barred from asserting these claims in an MAR pursuant to N.C. Gen. Stat. § 15A-1419(a)(3), and he has failed to show cause and prejudice or a fundamental miscarriage of justice to excuse his default.

Based on the foregoing, the court finds petitioner's claims are procedurally defaulted, with the exception of the ineffective assistance of appellate counsel claim, which is addressed below.

2. Merits

Petitioner's claims also are without merit. See McCarver, 221 F.3d at 593 (considering merits of procedurally defaulted claims as an alternative basis for affirming). Petitioner's claim that that state court violated Federal Rule of Evidence 609 by allowing prosecutors to elicit evidence that petitioner had a prior relationship with a minor is not a cognizable federal habeas claim. The Federal Rules of Evidence do not apply in state court. See Fed. R. Evid. 101(a). And claims "about the admissibility of evidence under state law rarely [give rise to] federal habeas corpus relief." See Spencer v. Murray, 5 F.3d 758, 762 (4th Cir. 1993); see also Estelle v. McGuire, 502 U.S. 62, 68 (1991) (explaining errors of state law are not cognizable claims in federal habeas corpus proceedings). "It is only in circumstances impugning fundamental fairness or infringing specific constitutional protections that a federal question is presented" by a challenge

---

[2] Petitioner also would not have been prejudiced if he had raised his ineffective assistance of counsel claims on direct appeal. Had petitioner raised the claims on direct appeal and the North Carolina Court of Appeals determined the claims were premature, the court of appeals would have dismissed them without prejudice so that petitioner could have reasserted them in a subsequent MAR. See Fowler, 753 F.3d at 463 (citing Fair, 354 N.C. at S.E.2d at 167); State v. Thompson, 359 N.C. 77, 122 (2004) (noting that "to avoid procedural default under N.C. Gen. Stat. § 15A–1419(a)(3), defendants should necessarily raise those [ineffective assistance of counsel] claims on direct appeal that are apparent from the record."); State v. Al–Bayyinah, 359 N.C. 741, 752–53 (2005) (dismissing ineffective assistance of counsel claim asserted on direct appeal without prejudice to pursue the claim in an MAR).

11

to the admissibility of evidence. Spencer, 5 F.3d at 762 (quoting Grundler v. North Carolina, 283 F.2d 798, 802 (4th Cir. 1960)). Petitioner fails to show that the state court's decisions overruling his objections to testimony regarding the minor's age violated a specific constitutional provision or resulted in a fundamentally unfair trial. Accordingly, petitioner fails to show that the North Carolina Court of Appeals' resolution of this claim was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court, or that the state court decision was based on an unreasonable determination of the facts in light of the evidence presented in state court. 28 U.S.C. § 2254(d).

Petitioner also alleges prosecutorial misconduct based on the prosecutor's allegedly improper remarks during closing arguments that the shooting victim was also the victim of domestic violence perpetrated by defendant. Improper remarks during a closing argument violate a defendant's Fourteenth Amendment due process rights only where the comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Darden v. Wainwright, 477 U.S. 168, 181 (1986).

Here, the North Carolina Court of Appeals determined the remarks suggesting petitioner abused petitioner during their relationship "did not infect the trial with fundamental unfairness." Lane, 2019 WL 1281471, at *3. The court agrees that the solitary reference to domestic violence, did not "so infect the trial with unfairness" as to amount to a violation of due process. See Darden, 477 U.S. at 181. Petitioner has not established that the state court's resolution this claim contravened 28 U.S.C. § 2254(d).

Petitioner further argues that trial counsel's failure to object to the closing argument constituted ineffective assistance of counsel in violation of the Sixth Amendment. The Sixth

12

Amendment right to counsel includes the right to effective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 686 (1984). To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must satisfy a two-prong test. First, a petitioner must show that counsel's performance was deficient in that it was objectively unreasonable under professional standards prevailing at the time. Id. at 688. The court must be "highly deferential" of counsel's performance and must make every effort to "eliminate the distorting effects of hindsight." Id. at 689. Petitioner must overcome "a strong presumption that counsel's representation was within the wide range of reasonable professional assistance" and establish "that counsel made errors so serious that counsel was not functioning as the counsel guaranteed [him] by the Sixth Amendment." Harrington v. Richter, 562 US 86, 104 (2011). For the second prong, petitioner must show there is a "reasonable probability" that, but for the deficiency, the outcome of the proceeding would have been different. Id.

Petitioner fails to establish the prejudice component of the ineffective assistance inquiry. There is no evidence of a reasonable probability of a different outcome had petitioner objected to the closing argument in light of the volume of evidence against petitioner. See Lane, 2019 WL 1281471, at *1–2 (recounting evidence against petitioner). Accordingly, petitioner's ineffective assistance of counsel claim premised on the failure to object to the prosecutor's closing argument is without merit.

Petitioner also challenges his jury instructions, arguing that the state trial court erred by refusing to provide an instruction on imperfect self-defense, and (as to the attempted first-degree murder charges) the lesser-included offense of voluntary manslaughter. As to the imperfect self-defense instruction, the North Carolina Court of Appeals determined that the state trial court gave

13

that instruction. See Lane, 2019 WL 1281471, at *4. "A determination of a factual issue made a State court shall be presumed to be correct" unless rebutted by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Petitioner has failed to rebut the presumption that the state court's factual finding was correct. Accordingly, his claim that the state trial court failed to give an instruction on imperfect self-defense is without merit.

The court next turns to the claim that the state trial court erred by failing to give an instruction on the lesser-included offense of voluntary manslaughter. The North Carolina Court of Appeals determined that, on plain error review, "[the defendant] has not shown that, but for the allegedly improper instruction, the jury probably would have reached a different result [in light of the evidence supporting the jury's verdict]." Lane, 2019 WL 1281471, at *4.

The Supreme Court has never determined that a lesser-included offense instruction is required in a non-capital trial. See Beck v. Alabama, 447 U.S. 625, 638 n.14 (1980) (reserving the issue). This claim, accordingly, is precluded by 28 U.S.C. § 2254(d)(1), which permits habeas relief only based on "clearly established federal law, as determined by the Supreme Court of the United States" and therefore does not allow for retroactive application of newly established law on federal habeas review. See Ramdass v. Angelone, 187 F.3d 396, 406 (4th Cir. 1999); see also Robinson v. N. Carolina Atty. Gen., No. 99-7530, 2000 WL 1793060, at *1 (4th Cir. 2000) (concluding petitioner's claim that due process required lesser-included offense instruction in non-capital proceeding is barred by § 2254(d)(1)'s anti-retroactivity provision and collecting cases holding same). Where petitioner has not established that his alleged right to a lesser-included offense instruction was clearly established by the Supreme Court at the time of his trial or direct

14

appeal, he has not shown that the state court's resolution of this claim contravened federal law under the standard set forth in § 2254(d).[3]

Petitioner further asserts that the failure to request a voluntary manslaughter instruction amounted to ineffective assistance of counsel. Petitioner, however, has failed to demonstrate a reasonable probability that, but for counsel's alleged error, the result of his trial would have been different. Harrington, 562 US at 104. Accordingly, petitioner is not entitled to federal habeas relief on this claim of ineffective assistance of counsel.

Petitioner also contends that the trial court erred by denying his request to dismiss his trial counsel. Where petitioner proceeded in forma pauperis in his state trial proceedings, he does not have a constitutional right to choose his counsel. See United States v. Gonzalez-Lopez, 548 U.S. 140, 144 (2006). Furthermore, petitioner has not shown that the state court's denial of his request for new counsel violated clearly established federal law by preventing him from mounting an adequate defense or otherwise receiving a fair trial. See United States v. Blackledge, 751 F.3d 188, 194 (4th Cir. 2014); United States v. Johnson, 114 F.3d 435, 443 (4th Cir. 1997). The trial court here inquired into the basis for defendant's request for new counsel and correctly determined that he did not show good cause for new counsel particularly where the request was clearly untimely. (See Trial Tr. (DE 21-8) at 10–12). Petitioner again fails to establish a violation of

---

[3] Furthermore, jury instructions are generally matters of state law and procedure which are not cognizable on federal habeas review. See Bates v. Lee, 308 F.3d 411, 420 (4th Cir. 2002). A federal habeas court's review of allegedly erroneous jury instructions is limited to assessing whether the instruction "so infected the entire trial that the resulting conviction violates due process." Estelle, 502 U.S. at 67–68; Cupp v. Naughten, 414 U.S. 141, 147 (1973) ("[T]he question is not whether the trial court failed to isolate and cure a particular ailing instruction, but rather whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process."). Petitioner wholly fails to meet this standard.

15

federal law under § 2254(d). See Blackledge, 751 F.3d at 194–95; United States v. Gallop, 838 F.2d 105, 108 (4th Cir. 1988).

Finally, petitioner alleges that his appellate attorney was ineffective for failing to raise the choice-of-counsel claim on direct appeal. Although petitioner did not present this claim to the state court, and it is not procedurally defaulted because he could not have raised it on direct appeal, the court exercises its discretion to proceed to the merits. See 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus [under § 2254] may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."). And where petitioner's underlying claim that the trial court erred by denying his request for new counsel is without merit, appellate counsel is not ineffective for failing to raise this claim. See Strickland, 466 U.S. a 688. Nor has petitioner shown a reasonable probability of a different outcome had counsel raised the claim on appeal. Harrington, 562 U.S. at 104.

In sum, petitioner's claims that the trial court erred by denying his request for new counsel, and that appellate counsel was ineffective for failing to raise the issue on direct appeal are without merit under either de novo or deferential review pursuant to § 2254(d).

C.      Certificate of Appealability

Rule 11 of the Rules Governing Section 2254 Cases ("Habeas Rules") provides "the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Having determined petitioner is not entitled to relief and respondent is entitled to

16

dismissal of the petition, the court considers whether petitioner is nonetheless entitled to a certificate of appealability with respect to one or more of the issues presented in his habeas petition. A certificate of appealability may issue only upon a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where a petitioner's constitutional claims have been adjudicated and denied on the merits by the district court, the petitioner must demonstrate reasonable jurists could debate whether the issue should have been decided differently or show the issue is adequate to deserve encouragement to proceed further. Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003); Slack v. McDaniel, 529 U.S. 473, 483-84 (2000).

Where a petitioner's constitutional claims are dismissed on procedural grounds, a certificate of appealability will not issue unless the petitioner can demonstrate both "(1) 'that jurists of reason would find it debatable whether the petition [or motion] states a valid claim of denial of a constitutional right' and (2) 'that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" Rose v. Lee, 252 F.3d 676, 684 (4th Cir. 2001) (quoting Slack, 529 U.S. at 484). "Each component of the § 2253(c) showing is part of a threshold inquiry, and a court may find that it can dispose of the application in a fair and prompt manner if it proceeds first to resolve the issue whose answer is more apparent from the record and arguments." Slack, 529 U.S. at 484-85.

After reviewing the claims presented in the habeas petition in light of the applicable standard, the court finds reasonable jurists would not find the court's treatment of any of petitioner's claims debatable or wrong and none of the issue are adequate to deserve encouragement to proceed further. Accordingly, a certificate of appealability is denied.

17

## CONCLUSION

Based on the foregoing, respondent's motion for summary judgment (DE 19) is GRANTED. The petition is DISMISSED with prejudice, and a certificate of appealability is DENIED. The clerk is DIRECTED to close this case.

SO ORDERED, this the 22nd day of September, 2021.

                                                          LOUISE W. FLANAGAN  
                                                          United States District Judge